In re AUSTIN.
Patent Appeal No. 2328.

Court of Customs and Patent Appeals.
May 28, 1930.

Rehearing Denied June 9, 1930.

Wesley G. Carr, of Pittsburgh, Pa. (F. W. Lyle, of East Pittsburgh, Pa., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Commissioner of Patents affirming the decision of the Examiners in Chief which, in turn, affirmed the decision of · the Primary Examiner denying claims 5, 6, 12, and 13 of appellant's application for a patent for an alleged invention relating to a latching or locking device for automatic circuit interrupters.

Claim 5 is illustrative. It reads:

"5. In locking mechanism for switches, a moveable switch contact member, a switch-operating lever and a locking bar provided with a projection adapted to move in a curved path, in combination with a swinging lock for said operating lever adapted to move into the path of the said projection, and a latch for the lock adapted to releasably maintain it in an operative position with respect to the said projection."

The involved claims were held unpatentable over the issue in an interference—No. 51,235—between an application of one Atwood and a joint application of Austin and MacNeill.

The involved application of Austin and the joint application of Austin and MacNeill were owned by a common assignee—the Westinghouse Electric & Manufacturing Company.

Interference No. 51,235 was declared July 18, 1924. On September 26, 1924, the party Atwood moved to add certain claims to the interference. On May 6, 1925, the Law Examiner denied the motion as to claims 10 and 11, but "ruled that they should be 'held subject to the issue' of the interference." Thereafter, on May 15, 1925, appellant copied two of the claims included in the Atwood motion —10 and 11—and, by amendment, made them claims 12 and 13 of his application. At the same time appellant requested that the Primary Examiner "regain jurisdiction over interference 51,235, entitled Atwood vs. Austin & MacNeill, * * * for the purpose of redeclaring that interference, · or declaring such other interferences as he may deem proper, to include" the claims in appellant's amended application. On May 21, 1925, the Primary Examiner held that he had "no authority to take the action indicated by applicant in his 'Remarks' accompanying the above noted amendment. Applicant's remedy is promptly to file a motion under Rule 109 in the interference, 51,235." On May 25, 1925, appellant requested the Primary Examiner to reconsider his holding of May 21, 1925. Thereafter, on July 25, 1925, appellant, and his assignee, the Westinghouse Electric & Manufacturing Company, filed a petition with the Commissioner of Patents asking that the Primary Examiner be instructed to reform interference No. 51,235 by adding the amended Austin application. The petition was denied by the Commissioner.

The above-mentioned motions of appellant were made and disposed of in the ex parte proceedings relating to appellant's application for a patent.

On May 15, 1925, counsel for appellant, who was also counsel for Austin and MacNeill

in interference No. 51,235, called the attention of the Examiner of Interferences to the amendment that day made by appellant to his application for a patent, and requested that the Examiner of Interferences "remand this interference to the Primary Examiner for the purpose of considering the redeclaration thereof or the declaration of such other interferences as he may deem proper, in view of the amendment just filed in that application."

Thereafter, on May 29, 1925, the Westinghouse Electric & Manufacturing Company, the common assignee of the Austin and the Austin and MacNeill applications, moved that interference No. 51,235, then pending between Atwood and Austin and MacNeill, be reformed by admitting appellant's application "to the present interference as to counts 1 and 2," together with other claims therein set forth.

The concluding paragraph of the motion reads as follows:

"This motion is accompanied by a verified showing with respect to the delay in not bringing the present motion until after the expiration of the period prescribed in Rule 109."

Accompanying the motion was an affidavit of Jesse R. Langley, an assistant attorney in the office of Wesley G. Carr, General Patent Counsel for the common assignee. The affidavit contains, in substance, the following: That, although affiant, as counsel for the common assignee, "had general charge of matters connected with" interference No. 51,235, one J. H. Kendig was in direct charge thereof *"during the period allowed for motions subsequent to its* [the interference] *declaration and for some months thereafter"*; that Kendig was "relatively unfamiliar with the art relating to circuit breakers and particularly to the subject-matter of the pending applications prepared by the Patent Department of the Westinghouse Electric & Manufacturing Company to which his attention had not been directed by the usual routine of Office actions and amendments; (4) That for substantially the past two months the said J. H. Kendig has been unable to devote his entire time to patent matters by reason of illness and that, during this time, the present interference has been in direct charge of L. G. Budlong, who had previously been in charge of patent matters relating to circuit breakers and was familiar with the subject-matter of pending applications relating to circuit breakers prepared by the Patent Department of the Westinghouse Electric & Manufacturing Company; (5) That, upon an inspection of the subject-matter of the several counts of the issue of the present interference, the said L. G. Budlong recognized that the application of Walter M. Austin, Serial No. 270,110 involved similar subject-matter and called the situation to the attention of deponent; (6) That the said L. G. Budlong was advised to present an amendment in the *Austin application embodying such counts of the issue as read accurately upon the structure shown and described therein and, in addition, such claims of the Atwood application as embodied common subject-matter.* This amendment was presented on May 15, 1925, and the Patent Office was requested to add the party Austin to the existing interference. The Primary Examiner disclaimed jurisdiction for the purpose requested and, accordingly, the present motion has been brought for the purpose of securing the result sought by amendment; and (7) That the delay in bringing the attached motion was unavoidable by reason of the circumstances set forth above and that steps were taken immediately to notify the Patent Office and counsel for the party Atwood upon the discovery of the relation of the application of Austin to the present interference." (Italics ours.)

The Law Examiner refused to set the motion for hearing. Thereupon, the common assignee filed a petition requesting the Commissioner to exercise the supervisory authority vested in him and to direct the Law Examiner to set for hearing the motion to amend the interference.

In his decision denying the petition, the Commissioner said:

"It was clearly incumbent upon the attorneys for Austin and MacNeill and their assignee, when the examiner suggested a claim for the purpose of interference in the Austin and MacNeill application, to have ascertained whether or not the assignee owned other applications in which this claim could have been made, or at least to have ascertained that fact, if fact it be, within the motion period in this interference, so that all preliminary questions could have been decided at one time. The present motion, however, was not brought until after the motion period had expired and after a motion to amend brought by the party Atwood had been decided. It is to be noted that in the ex parte application of Austin the primary examiner has held that Austin is not entitled

to make either claims corresponding to the present counts of the interference or the claims proposed to be added by the motion."

On February 16, 1926, Austin and MacNeill and the common assignee conceded priority of invention of the "subject-matter" of interference No. 51,235, to the party Atwood "without in any manner conceding, waiving or affecting any right or rights that Walter M. Austin, as a sole inventor, may have to contest priority of invention of the subject-matter of counts Nos. 1 and 2 of the said interference, or of other claims relating to the same general subject-matter, with the said Winfield A. A. Atwood in any other interference proceeding or proceedings."

In his decision in the case now before us, the Commissioner, among other things, said:

"Claims 5, 6, 12, and 13 are broader than the issue of the interference, are directed to the same inventive subject-matter, and are readable upon the construction of Atwood; of Austin and MacNeill, and upon that of the appellant, Austin. Two of these claims, 5 and 6, were presented in Austin's sole application July 1, 1921, and were presumably overlooked when the interference was declared. Claims 12 and 13 are claims now present in the patent to Atwood, which patent was issued after the termination of the interference in which a final award of priority was rendered in Atwood's favor. The assignee of the applicant here is in the position of seeking the allowance, either with or without a further interference with Atwood, of claims broader than those it lost in the interference which it unsuccessfully conducted with the joint case of Austin and MacNeill. Ordinarily, the established practice would preclude the assignee prevailing in either of these situations since it elected with which, the joint or the sole application, it would contest the interference, and having made such an election and having failed to take proper steps by motion to amend at the proper time to include the broad claims as counts of the issue, it would be estopped from thereafter seeking the allowance of or a further interference as to the broader claims. It is the practice to hold that the common assignee of a joint and a sole application is charged with a knowledge of what they disclose and what constitutes the joint and the sole inventions of the applicants and such assignee should have presented, by motion within the motion period, these broader claims in either the joint or the sole application and have asked the amendment of the issue. Had such action been taken by the common assignee in the instant case, the refusal of the law examiner to include such broad claims as counts on the ground they were not patentably distinguished from the existing counts would have been subject to an appeal to the examiners-in-chief and, if necessary, to the Commissioner, and the whole question of the right to such broader claims could have been determined during the interference proceeding.
* * *

"It is believed these four claims are not patentable over the issue of the interference notwithstanding the fact that the limitation of the spring biasing both locking levers to their actuated position is a feature not disclosed in Austin's application and, in consequence, Austin could not actually support the counts of the interference upon his disclosure. * * *

"It is believed clear enough that the real invention defined in the counts of the interference is realized in all three of the applications directed to such subject matter. The broad claims, in consequence, now sought to be obtained by Austin are not patentable over the issues of that interference and Austin's assignee having contested an interference with the counts as they define the invention can not obtain a second interference because of its error in placing and contesting the counts in the joint application. It would be unjust to Atwood at this late date to require him or his assignee to again contest an interference."

The pertinent part of Rule 109 of the Rules of Practice in the Patent Office, reads as follows:

"An applicant involved in an interference may, at any time within thirty days after the preliminary statements (referred to in rule 110) of the parties have been received and approved, on motion duly made, as provided by rule 153, file an amendment to his application containing any claims which in his opinion should be made the basis of interference between himself and any of the other parties. Such motion must be accompanied by the proposed amendment, and when in proper form will be set for hearing before the law examiner. Where a party opposes the admission of such an amendment in view of prior patents or publications full notice of such patents or publications must be given at least five days prior to the date of hearing. On the admission of such amendment and the adoption of the claims by the other parties within a time specified by the law examiner the primary examiner shall redeclare the interference or shall declare such other inter-

ferences as may be necessary to include the said claims. * * *

"Any party to an interference may bring a motion to put in interference any claims already in his application or patent which in his opinion should be made the basis of interference between himself and any of the other parties. Any party to an interference may bring a motion to substitute any other application owned by him, as to the existing issue, or to include an application or a patent owned by him, as to claims which he deems should be made the basis of interference between himself and any of the other parties. Such motions are subject to the same conditions, and the procedure in connection therewith is the same, as far as applicable, as hereinabove set forth for motions to amend."

The preliminary statements of the parties to interference No. 51,235 were due not later than August 18, 1924, and were filed as follows: Atwood, August 4, 1924, Austin and MacNeill, August 9, 1924. They were approved by the Examiner of Interferences on September 5, 1924.

It was not until May 29, 1925, approximately eight months after the expiration of the period of time allowed by Rule 109, supra, that the common assignee of the Austin and the Austin and MacNeill applications filed a motion to reform the interference by adding the amended application of Austin. During this period, and prior thereto, counsel for the common assignee was acting for appellant, Austin, and, also, for Austin and MacNeill. He was, or should have been, familiar with the subject-matter and the scope of the invention covered by Austin's sole application, and should have complied with the Rules of Practice of the Patent Office. Had he complied with these rules, interference No. 51,235 would undoubtedly have been reformed to include such claims as were readable on the disclosures in the applications of the parties; or the common assignee, if it preferred to do so, could have substituted an amended application of appellant, Austin, for the joint application of Austin and MacNeill.

 Counsel for appellant, however, argues that the latter part of Rule 109 providing that "any party to an interference may bring a motion to substitute any other application owned by him," etc., was not a part of Rule 109 at the time interference No. 51,235 was declared, and that it was not made a part thereof until July, 1927. In this contention, counsel is correct. However, the common assignee was a party to the interference, and, as the owner of the involved application, was clearly bound by the other provisions of the rule. It will be observed that the first part of Rule 109 provides that *"an applicant involved in an interference may,* at any time within thirty days after the preliminary statements * * * of the parties have been received and approved, *on motion duly made,* * * * file an amendment to his application containing any claims which in his opinion should be made the basis of interference between himself and *any* of the other parties." (Italics ours.) If the common assignee, as the real party in interest, was a party to the interference within the meaning of the language of the last part of the rule, it was a party by virtue of its ownership of the Austin and MacNeill joint application. It was not involved as a patentee. Obviously, then, if it was a party, it was likewise an applicant. Furthermore, although counsel for appellant stated in open court that he was not aware of the fact, it has long been the practice in the Patent Office to require a common assignee, if it desires to raise the issue of priority, to bring into an interference, to which it is a party, all of its applications, patents, and claims which it deems should be made the basis of interference between it and the other parties thereto. Ex parte Temple and Goodrum, decided November 11, 1911, 176 O. G. 526, 1912 C. D. 70; Frickey v. Ogden, 1914 C. D. 19, Vol. 199 O. G. 307. Furthermore, if a party to an interference fails to comply with the rules of the Patent Office relative to the presentation of such claims, it is thereafter estopped from presenting them as a basis for another interference between the same parties. Ex parte Temple and Goodrum, supra; Frickey v. Ogden, supra; New Departure Manufacturing Co. v. Robinson, 39 App. D. C. 504; In re Capen, 43 App. D. C. 342; In re Wasserfallen, 54 App. D. C. 367, 298 F. 826, 828; Application of Doble, 57 App. D. C. 10, 16 F.(2d) 350.

In the decision in the case of In re Wasserfallen, which is particularly applicable to the issues in the case at bar, the court, in an opinion by Smith, J., said:

"In so far as the Patent Office and this court are concerned, the adjudications already had in this matter have finally settled, not only the rights of the parties under the issue or counts of the interference, but every question and the rights to every claim which might have been presented and determined in the interference proceedings. Blackford v. Wilder, 28 App. D. C. 535, 542; Cross v. Rusby, 42 App. D. C. 341, 342, 343, 344;

Cromwell v. County of Sac, 94 U. S. 351, 352, 353, 24 L. Ed. 195.

*"The language of the counts of the interference differs, it is true, from that of the claims of the reissue application; nevertheless if the interference applications disclosed the invention claimed in the reissue application, it must be held that the reissue claims were involved and might have been presented and determined in the interference proceedings. The invention was so disclosed, and it therefore follows that Wasserfallen was estopped by the interference decision from making the reissue claims.* New Departure Manufacturing Co. v. Robinson, 39 App. D. C. 504, 507; Blackford v. Wilder, 28 App. D. C. 535, 544, 550; In re Marconi, 38 App. D. C. 286, 293." (Italics ours.)

It is true, as argued by counsel for appellant, that, at the time the common assignee moved to reform interference No. 51,235 by admitting appellant's application as to counts 1 and 2 and other claims, the question of priority had not been determined; whereas, in the cases hereinbefore referred to, the issues of priority had been decided. However, the principle announced in the cited cases is applicable here, and, if the rules of the Patent Office are to be given any force and effect, this is a proper case for their application, otherwise, the common assignee of several applications could subject an applicant involved in an interference with one of its applications to prolonged, expensive, and vexatious litigation.

Furthermore, the rulings of the Commissioner of Patents on questions of mere practice in the Patent Office, in the absence of a showing of abuse of discretion, will not be reviewed by this court. In re Neill, 11 App. D. C. 584; Dalton v. Wilson, 44 App. D. C. 249. Surely, a plea of ignorance on the part of counsel, as to both the Patent Office practice and the subject-matter of the applications directly under their care, ought not to be used as an excuse by the Commissioner for subjecting an innocent party in an interference proceeding to the expense of successive trials and corresponding delay in the prosecution of his application for a patent.

In view of the holdings of the Patent Office tribunals that the appealed claims read on the disclosure of Atwood, the successful party to the interference, and as appellant has failed to show that these holdings are erroneous, the decision of the Commissioner ought to be, and accordingly is, affirmed.

Affirmed.