**ROBBINS v. STEINBART.**
Patent Appeal No. 2932.

Court of Customs and Patent Appeals.
April 4, 1932.

H. A. Toulmin and H. A. Toulmin, Jr., both of Dayton, Ohio, for appellant.

Paul A. Staley, of Springfield, Ohio, and Marston Allen, of Cincinnati, Ohio, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

In this appeal from the decision of the Board of Appeals of the United States Patent Office, in an interference proceeding, the invention relates to machines for making steel wool, and the issue is confined to two counts, as follows:

"1. In a machine for manufacturing steel wool, a table, cutting tools arranged adjacent thereto, means to guide a plurality of parallel strands formed from a single wire adjacent said tools over said table, said means consisting of sheaves over which the strands are looped at either end of said table, and means for driving said sheaves to move said wires independently of the pull of the wire thereon.

"2. In a machine for manufacturing steel wool, a table, cutting tools arranged adjacent thereto, means to guide a plurality of parallel strands formed from a single wire in engagement with said tools over said table, and means to drive said guiding means so that each loop of wire will be independently driven by said guiding means whereby the driving strands will be applied to each loop independently against the resistance of the tools engaging the strand of wire of that loop."

The counts were claims 17 and 57 of the Robbins patent, No. 1,584,145, issued May 11, 1926 (application filed October 14, 1924). Steinbart's application was filed on November 27, 1923. After the issuance of Robbins' patent, Steinbart copied the two claims at issue for the purpose of interference. Robbins' preliminary statement alleged conception in January, 1921, the embodiment of the invention in a full-sized machine on the 12th day of May, 1924, and successful operation of said machine in June, 1924. Steinbart's preliminary statement alleged conception and drawings January, 1922, and "that he first embodied his present invention in a full sized machine which was completed on or about the first day of October, 1924," which was successfully operated on about said last named date. It will be noticed that Steinbart claimed a date for actual reduction to practice later than his constructive date which was the date of filing the application on November 27, 1923. After seeing the filing date of Robbins, Steinbart moved to amend his preliminary statement and sought to change his date for the first actual reduction to practice from October 1, 1924, to April 30, 1924, which motion was denied by the Examiner of Interferences.

Robbins moved to dissolve the interference for the reason that the counts could not be read upon the machine shown and described in Steinbart's application and for the further reason that Steinbart's application showed and described an inoperative device and one lacking utility. The Law Examiner sustained the motion to dissolve upon the ground that Steinbart's machine was inoperative. Steinbart appealed to the Board of Appeals, which reversed the Law Examiner's decision. The board held that the machine as disclosed was prima facie operative and stated that, "It is believed the interference should be continued in order to give the parties oppor-

tunity, if they so desire, to present testimony on the question of operativeness."

In deciding the interference issue, the Examiner of Interferences accepted the ruling of the Board of Appeals as to Steinbart's right to make the counts as conclusive, since the new testimony taken did not warrant a different conclusion. He held as follows: "No ruling is made as to whether a knife resiliently pressed against the wires would be operable in the patent sense but even if such knife would be inoperable the skill of the art would have supplied an operable knife mounting and the resulting mechanism would have satisfied the counts of this interference."

He reviewed the evidence of both parties affecting their early conceptions and rejected all evidence of both parties as proving an earlier date of conception than the date of the filing of the Steinbart application, holding that Steinbart's application was a conception and reduction to practice of the counts in interference, and priority of invention of the counts was awarded to Steinbart.

Upon appeal to the Board of Appeals, it held, as did the Examiner of Interferences and the Law Examiner, that the counts read upon Steinbart's disclosure, and said: "Appellant contends as one of the allegations of error that the counts do not properly read upon Steinbart's disclosure. It is his view that the inclusion of the term 'independently' in the counts limits the counts to a machine in which some other means for advancing the wire is present other than the power sheaves. The counts were copied from Robbins' patent and were doubtless drawn in view of the disclosure where the additional winding reels are present. It is our view, however, that since the counts do not specifically include an additional means they should not be construed as limited to an apparatus in which such means is necessarily present."

Upon the question of inoperativeness of the Steinbart machine, the board said: "Taking up first the question of inoperativeness it is our opinion that the machine as disclosed in the Steinbart application is not a practical construction. The most serious difficulty as shown by the evidence relates to the mounting of the knives. The counts, however, are not specific as to this feature and since it was old in steel wool machines to employ knives in a similar way we do not consider that it would require the exercise of invention to substitute other knife mountings old in the art or modify those disclosed in the Steinbart application in such a way that a practical knife action would result. As previously

stated the particular subject matter of the issue relates to the feeding of the wire and we are satisfied there is no patentable relationship here between the feed and the knife mounting. We have also considered the improper showing of the gears and the other matters dealing with the alleged improper feeding of the wire but we consider that these matters also can be readily corrected and adjusted by those skilled in the art without requiring the exercise of invention. It is our view, therefore, that the Steinbart application contains an operative disclosure of the subject matter of the counts of the issue and the fact that many of the details shown were discarded, particularly with relation to the support for the knives, we do not regard as material."

It also concluded that the testimony relating to Robbins' conception earlier than the filing date of Steinbart was not satisfactory and gave him no conception date earlier than Steinbart's application. It also rejected the Steinbart proof as establishing an earlier date of conception than his filing date. Having held that Steinbart could make the counts and that his device was operable as far as the issue of the involved counts was concerned, and having held that Steinbart was the first to conceive and reduce to practice the issues of the counts, it affirmed the action of the Examiner of Interferences in awarding priority to Steinbart. From this decision Robbins appeals here.

█ If our consideration of the sufficiency of Robbins' evidence to establish a conception by him earlier than Steinbart's filing date were an initial question with us, it is possible that we might have arrived at a conclusion differing from those of the two concurring tribunals below; but we are not convinced that they are manifestly wrong, and under the well-known rule, we are constrained to concur in the holding of the board in this particular. Leonard v. Everett, 52 App. D. C. 90, 281 F. 594; Oldroyd v. Morgan, 58 App. D. C. 78, 24 F. (2d) 1004. We also concur in the holding of the board as to the effect of the evidence produced for the purpose of showing a conception date of Steinbart earlier than his filing date.

In view of our above conclusions, the issues narrow down to the following propositions:

First. Do the counts in issue read upon the disclosure of Steinbart in his application of November 27, 1923?

Second. Should the Steinbart application

be regarded as a conception and reduction to practice of the subject-matter of the counts?

The record and briefs are long and voluminous and contain more charges and evidence of false swearing and bitter controversy, than is involved in any appeal that has come to our attention. We do not regard it as necessary, in our decision of the issues presented, to indulge in extended comment on the many different phases of the case which have occupied the attention, in some instances at length, of the tribunals below.

On the first proposition as to whether the counts read upon Steinbart's disclosure, we agree with all the tribunals below, that have passed on the question, that the claims, as drawn, read directly upon Steinbart's application. When the counts are read in connection with Robbins' structure, a meaning can be given to them which probably was not in the mind of Steinbart, but the claims are couched in such language as to read directly upon Steinbart's disclosure and there are no limitations which restrict them to the disclosure of Robbins. On this phase of the case the Law Examiner aptly said: "The reason given by the party Robbins in support of his motion to dissolve on the ground that the party Steinbart can not make count 1 is that the count specifies means for pulling on the wire independently of the movement given to the wire by the power driven sheaves, but recitation of said means is not found in the count. The last element of the count 'means for driving said sheaves' is followed by the statement 'to move said wires independently of the pull of the wire thereon.' This statement does not directly or inferentially import an element into the count corresponding to 'means to pull the wire,' but clearly states that the pull of a wire does not drive the sheaves. The cutting effect of the knives as opposed to the movement of the wire by the sheaves would result in a pull on the wire, but the means for driving the sheaves is not dependent on the last mentioned 'pull.' It is clear that the Steinbart sheaves are driven by the motor 49 and are not moved by the pull of the wire."

Substantially the same reasons for arriving at the same conclusion as that arrived at by the Law Examiner are found in the decision of the Examiner of Interferences and the Board of Appeals, and we agree with such conclusions.

It may be suggested that the counts at bar must be given the construction contended for by appellant in order to sustain the validity of the two involved claims of appellant's patent, and that to give them the construction contended for by appellee would render them invalid by reason of the prior art. As far as we know this question was not considered by the tribunals below, and it certainly has not been sufficiently briefed nor discussed here to justify our consideration of it.

In Deibel v. Heise & Schumacher, 46 F.(2d) 570, 571, 18 C. C. P. A. 907, this court used the following language, which we regard as apt in the present controversy: "* * * The counts of the interference should be given the broadest interpretation which they will reasonably support, and this court is not justified in reading limitations into them for the purpose of changing the plain import of their terms. Had appellant desired to limit his claims to a particular kind or type of kraft paper, he might have done so. However, having deliberately elected to claim the invention broadly, he is not in a position to insist that limitations be read into his claims (the counts in issue) for the purpose of avoiding the issue of priority. * * * *"

The second proposition involves matters more controverted and more troublesome than those involved in the first proposition. Robbins points out a number of reasons why he regards the Steinbart machine as inoperative. In Steinbart's structure both drums turn in opposite directions, which would either prevent any operation or movement of the machine or would bring about a total destruction of the wire worked upon. Appellant contends that the cutting knives are wholly inoperative inasmuch as they are spring pressed, which permits chattering and the consequential destruction of the wire. It is unnecessary for us to enumerate or to discuss here other serious defects affecting the machine's operation which defects are pointed out in appellant's brief. Appellant contends that everything disclosed in Steinbart's application was abandoned except the legs; that new devices were supplied in most instances; that the whole machine was at one time abandoned; and that no successful operating machine was ever produced until 1925, and when so produced was in no sense in accordance with the disclosure of the Steinbart application.

With much of this contention we agree. It seems obvious that the knives would not function as intended; that the drums would not rotate properly; and that the machine had other serious defects which rendered it, as the board held, an impracticable construction. The gist of the decision of the board,

on this phase of the case, however, rests in its conclusion that the parts of the Steinbart machine which rendered its operation impracticable were such features as could be supplied from the prior art by a mechanic, or be supplied by a mechanic, without the necessity of inventive skill. At this point appellant vigorously and with much persuasiveness urges, in substance, that an applicant cannot claim a constructive reduction to practice from an application disclosure of an inoperative machine which, with the exception of the legs, must be discarded before a successful machine can be constructed; that the structure speaks for itself in this respect; and that appellee's preliminary statement and his attempt to amend the same, together with his apparent abandonment of the original structure and final construction of an almost wholly differently operating machine, show conclusively that Steinbart's application was not a reduction to practice of the subject-matter of the counts at bar.

We are fully cognizant of the unusual situation which the facts in this case present, but nevertheless we must agree with the holdings of the tribunals below to the effect that if it did not require invention to substitute elements of the prior art for the elements responsible for the inoperativeness, the machine could not be held to be inoperative as far as the issue in the counts involved is concerned. For instance, let us suppose that the only feature claimed to be inoperative in the Steinbart device was the fact that the two drums run in opposite directions. No one has contended, and it cannot be contended logically, that it requires inventive genius to make them both run in the same direction and thus operate in accordance with the issues presented by the counts at bar. Under such circumstances it would be improper to hold that the structure by reason of such defect was not a reduction to practice of the issues. Carrying this thought further, if all the other elements contributing to the inoperativeness could be supplied without inventive genius, it seems obvious that the same result would be arrived at. True enough, it is possible to visualize a situation where, owing to many defects, such an impracticable and unworkable contraption might be proposed as to amount to no disclosure at all, and where those skilled in the art, seeking to follow the teachings of the applicant, would find nothing to work upon in trying to evolve from the applicant's teachings a successful commercial machine. Appellant in one phase of its argument seeks to present this supposed state of facts as a true picture of

conditions at bar. When all the facts and their relation to the particular issues at bar are considered, such a viewpoint is not justifiable.

On the question of curing defects by resorting to the prior art or mechanical skill, the Patent Office and the appellee have cited us no authority. The appellant, however, contends that the law does "not permit reconstruction of a machine to make it operative," and cites Weisbrod v. Sisson, 46 App. D. C. 311, and Bliss v. Brooklyn, 10 Blatchf. 521, Fed. Cas. No. 1546, and suggests that the doctrine in those cases applies, since appellee would have to abandon his "old flexible knife mounting and movement, which was the essence of his invention." Regardless of what value we might give such a doctrine in a proper case, it has not been made plain to us that the knife mounting is the essence of the invention. It is, as heretofore stated, no part of the invention of the involved claims.

The rule applicable to the question at bar is well laid down in Computing Scale Co. v. Standard Computing Scale Co. (C. C. A.) 195 F. 508, 511, in which the following language was used: "The primary question is: To what extent must a device, built as shown in the drawings and specifications, be operative in order to support a conclusion that the conceived invention has been completely made? This question was quite fully considered by this court in an opinion by Judge (now Mr. Justice) Lurton in Standard Cartridge Company v. Peters Cartridge Company, 77 F. 630, 23 C. C. A. 367. He quotes from [Webster] Loom Co. v. Higgins, 105 U. S. 586, 26 L. Ed. 1177, the illustration of an invention in some appurtenance of the steam engine which may be completely shown without describing other parts of the engine. He lays down the rules, also, as fully as contended for by the patentee here, that a completed invention is not negatived because the drawings are rude or imperfect, or because they are incomprehensible to one unacquainted with that class of machinery, or because they do not in all respects show the relation of the novel features to the old device nor describe precisely the mode of attachment nor with scientific exactness show other details of the combination. He concludes that the controlling question is whether 'the absent features are such as would be readily supplied by a mechanic familiar with the subject and without requiring further invention' (77 F. 647, 23 C. C. A. 383); and whether the mechanical questions left unsolved by the drawings were of such dignity as to re-

quire invention to carry into effect the idea indicated by the drawings (77 F. 652, 23 C. C. A. 388); and whether 'that which remained imperfect in the sketches was remediable by the exercise of the technical knowledge of mechanics familiar with the construction and operation of the old machines' (77 F. 655, 23 C. C. A. 391). It is true Judge Lurton was considering a question really of conception, but he was adopting and applying the rule appropriate to questions of completion or reduction to practice." See, also, Howell v. Hess, 122 O. G. 2393, 1906 C. D. 217.

We think that the features of the Steinbart device responsible for its alleged inoperativeness could have been corrected without the exercise of inventive skill.

The decision of the Board of Appeals, awarding priority of invention to the party Steinbart in the subject-matter of the counts at issue, is affirmed.

Affirmed.