**TRUMBULL et al. v. KIRSCHBRAUN.**
Patent Appeal No. 3191.

Court of Customs and Patent Appeals.
Dec. 30, 1933.

Eakin & Avery, of Akron, Ohio (G. F. Gourley and George F. Scull, both of New York City, of counsel), for appellants.

Charles M. Thomas, of Washington, D. C. (Samuel Stearman, of New York City, and Francis D. Thomas, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

On March 11, 1927, an interference proceeding was instituted and declared between a patent issued to Harlan L. Trumbull and John B. Dickson, appellants, on October 28, 1924, on an application filed September 7, 1922, and an application of the appellee, Lester Kirschbraun, filed October 25, 1926, for a similar invention. There were thirteen counts in the interference. Appellants suggest, and we concur, that counts 1, 2, 7, and 12 are representative of the issues of the interference. They are as follows:

"1. The method of dispersing a gum into a colloidal substance which comprises forming a viscous, plastic mass of said colloidal substance, and dispersing the gum into said mass by mastication while maintaining said colloidal substance as a continuous phase.

"2. The method of dispersing a gum into a hydrophilic colloid which comprises forming a viscous paste of said colloid with water, and dispersing the gum into said paste by mastication while maintaining said paste as a continuous phase."

"7. The method of dispersing a gum into a colloidal substance which comprises forming a viscous paste of said substance with a solvent, and dispersing the gum into said paste by mastication while maintaining said paste as a continuous phase."

"12. The method of dispersing a gum into a colloidal substance which comprises forming a viscous paste of said substance with a solvent, dispersing the gum into said paste by mastication while maintaining said paste as a continuous phase, and thereafter thinning the mass with a solvent of said substance until the product is substantially liquid."

The Kirschbraun application, involved in the interference, was filed as a division of an earlier application, which last-named application was filed August 16, 1920, and which, in substance, was for a patent on improvements in waterproof sheets and the processes of making the same, and the disclosure of which showed the making of such sheets of cotton stocks, saturated or impregnated with a waterproofing agent made of rubber and some fluxing material, such as asphalt or coal tar pitch, kneaded or mixed into an aqueous paste, made of colloidal clay and water. His process is thus described in his specification:

"The invention may be carried out as follows: I preferably take rubber and flux it with a bituminous material, such as asphalt or coal tar pitch, on calendar rolls, in the usual way. I then gradually add this rubber compound while it is in a more or less heated plastic condition to a relatively stiff paste of colloidal clay and water, the latter being in a heated condition, as for example, 180° F. The rubber compound is added to the paste in the well known types of kneading or masticating machines, so as to permit the rubber compound to become gradually dispersed in very small particles in the aqueous paste. This mixture is then thinned with the water and forms a nonadhesive emulsified matrix in which the rubber compound is dispersed through the water."

In this original application there were four claims, two for the product, a waterproof sheet made of cotton stocks, and two for the processes of making such waterproof sheet.

On June 6, 1926, the appellee, Kirschbraun, copied some of the claims from said Trumbull and Dickson patent. These claims were rejected by the Examiner for the reason, as stated by him, that they involve a broadening of the invention beyond the original disclosure of the applicant; that the applicant's emulsifying agent consisted of "colloidal clay," while the patent claims were limited to the use of water soluble emulsifying agents "such as glue, casein, gluten, sodium, resinate, gum arabic or similar material." This rejection was made permanent by said Examiner on November 1, 1926.

The application of Kirschbraun, here in issue, was filed five days before the final rejection of his said claims by the Examiner. This divisional application copied some of the Trumbull and Dickson patent claims, and supplemental claims were also thereafter filed.

These claims were rejected by a different Examiner than the one who had before had this matter under consideration, but upon practically the same grounds; namely, that the claims in the divisional application were too broad and were not supported by the disclosure. Thereafter this interference was declared, and, on June 21, 1927, the appellants moved to dissolve the interference for three reasons, which were as follows:

"A. That the process disclosed in the Kirschbraun application is inoperative (1) in that the description of the process in the Kirschbraun application is so incomplete, vague and indefinite as not to describe an operative process in the sense that one skilled in the art can from the said description and directions therein contained carry out the process; and (2) in that the specification of the Kirschbraun application is so indefinite and insufficient as not to constitute the full and complete disclosure required by law to warrant the issuance thereon of a valid patent comprising the counts of the issue.

"B. That there is no adequate disclosure in the application of Kirschbraun for the employment in claims of that application of the terms and phrases of the counts of the issue, such as (1) 'gum,' (2) 'viscous plastic mass of said colloid,' (3) 'while maintaining said colloidal substance as a continuous phase,' (4) 'hydrophilic colloid,' (5) 'viscous paste of said colloid,' (6) 'in plastic form,' (7) 'continuous phase,' and other terms and phrases of the counts of the issue which do not occur in the Kirschbraun specification as originally filed, and that the inclusion therein of the terms and phrases of the counts of the issue constitutes 'New Matter' in said Kirschbraun application.

"C. That the subject matter of each and every count of the issue is broader than and is not supported by the original disclosure of the parent Kirschbraun application, and the

inclusion of each and every count of the issue in the Kirschbraun application involved in this interference constitutes an undue and an unwarranted extension of the original Kirschbraun application, which is limited in its original disclosure to 'colloidal clay' as one ingredient, and to 'mixed rubber and asphalt' as a second ingredient, and consequently Kirschbraun is limited by his disclosure to claims to these specific ingredients, and as thus limited is not entitled to make any of the counts of the issue in his application herein involved."

On August 16, 1928, the Law Examiner denied the motion to dissolve on grounds A and B, but granted it as to ground C, his conclusion being that the counts constituted an unwarranted broadening of the claims of Kirschbraun's invention, and therefore could not be made by him. This decision was appealed to the Board of Appeals, which reversed the decision of the Law Examiner as to the counts here in issue. The decision of the Board may be briefly summed up in the following expression found in the decision of the Board:

"The Office has already allowed the broad claims to the patentee and while he has mentioned a few more colloids than appellant, there is no evidence that all colloids are capable of being employed in producing the artificial latex and since the claims clearly read on appellant's disclosure we regard that he is substantially as much entitled to make them as was the patentee."

This decision was reaffirmed on petition for rehearing.

Thereupon the appellants applied for, and received, permission to take testimony to establish the inoperativeness of appellee's disclosure, and, in addition, testimony was taken on behalf of the appellee on the same issue.

There was raised by the appellee, Kirschbraun, in the hearing before the Examiner of Interferences, after taking the aforesaid testimony, a question of estoppel of the appellants to contest the validity of the claims of Kirschbraun's application. It appeared from the testimony that on September 12, 1927, during the pendency of this interference, the Goodrich Rubber Company, assignee of Trumbull and Dickson's aforesaid patent, entered into a license agreement by which it became the licensee of appellee's application then and here in interference, as well as under the original application of appellee filed August 16, 1920.

It was represented to the Examiner of Interferences that this licensing constituted an estoppel of the appellants, and that they might not be heard, thereafter, to question the operability of appellee's disclosure or the validity of his claims. The Examiner of Interferences differed with the appellee in that respect, and, after considering the entire record, awarded priority to the appellee. The matter was taken to the Board of Appeals, which affirmed the decision of the Examiner of Interferences in a decision which held that the counts of the interference read on appellee's disclosure, and that the operability and sufficiency of appellee's disclosure was established by the evidence taken in the case. No attention was given by the Board to the question of estoppel. We assume that, the finding being for the appellee on the broad issue, the Board was of opinion that no necessity existed for a discussion of the estoppel claim. Again the Board repeated, in a general way, its former statement in the following language:

" * * * We have, therefore, before us, two applications in a general way quite similar and a patent has been granted on the later-filed with claims which we hold to be so broad that they dominate the earlier application. Since these are the claims of a patent, even if there may be some doubt as to the sufficiency of the disclosure, certainly in this appeal we cannot question the validity of the patent and certainly the patentees should not be allowed to remain in undisturbed possession of these claims when an earlier inventor has appeared unless it can be proved beyond a reasonable doubt that the disclosure of the first application is insufficient."

The appellants have now brought the case here, and, in their brief, have again set out their claims A, B, and C heretofore quoted. However, on oral argument, counsel have waived said ground B, and make two contentions only, which are stated in the following language:

"(1) That, under the settled law, as stated in The Incandescent Lamp Patent, 159 U. S. 465, 16 S. Ct. 75, 40 L. Ed. 221, Corona Co. v. Dovan Corp., 276 U. S. 358, 48 S. Ct. 380, 72 L. Ed. 610, and In re Dosselman, 37 App. D. C. 211, Cases, Kirschbraun is not entitled to make counts covering the use of every colloidal material, assuming that the counts are to be interpreted so broadly, as the Patent Office has done, since he does not purport to disclose more than a single colloidal material (colloidal clay), and particularly since the Board has found that there is no evidence that all colloids are capable of being used in making artificial latex, and

more particularly since it is now shown that at least one colloidal clay will not so function.

"(2). That the Kirschbraun specification is fatally defective and inoperative by reason of a disclosure insufficient to enable one skilled in the art of August, 1920 to carry out the process."

The appellee takes issue with both of said propositions, and, in addition, reiterates his claim that the appellants are estopped from claiming the inoperativeness of disclosure and invalidity of appellee's claims, because of the license agreement hereinbefore mentioned.

On the threshold of this case lies the consideration of the question of whether the appellants, by reason of being licensees under appellee's application now involved in this interference, are estopped from claiming said inoperativeness and invalidity. It has been generally recognized that the principles of equitable estoppel are applicable in patent litigation, whether the same be suits in equity or in the proceedings in the United States Patent Office, and appeals therefrom. Consolidated Fruit Jar Co. v. Wright, 94 U. S. 92, 24 L. Ed. 68; In re Mower, 15 App. D. C. 144, 154; In re Austin, 40 F.(2d) 756, 17 C. C. P. A. 1202.

It has been held, in many cases, and it must be accepted as the law on the subject, that a licensor or assignor will not be heard to question the validity of his patent as against his licensee or assignee, and this, we believe, is equally applicable whether the licensor or assignor be a patentee or an applicant only. Foltz Smokeless Furnace Co. v. Eureka Smokeless Furnace Co. (C. C. A.) 256 F. 847; Dynamic Balancing Machine Co. v. Akimoff (D. C.) 279 F. 285; Swan Carburetor Co. v. General Motors Corp. (D. C.) 42 F.(2d) 452, affirmed in (C. C. A.) 44 F.(2d) 24; Stockland v. Grader Mfg. Co. (C. C. A.) 222 F. 906.

This rule, however, as we view it, has not been extended to the limit claimed by counsel for appellee, namely, that the licensee shall also be held to be estopped from questioning the validity of the claims of his licensor when the licensor is an applicant only. Attention is called by counsel to Clark v. Adie, vol. 2, Law Reports, P. C., 423, in which Clark was the licensee of Adie under a patent, and where afterwards Clark made clippers which were said to be an infringement of Adie's patent. Clark contended that, not only was his device not made according to Adie's patent, but that Adie's

patent was invalid because of the prior art. The court was of opinion that, if the licensee had used what was within the patent, then, like a tenant under a lease, he would be estopped from denying the patentee's right and must pay royalty. However, it was observed by the court that he might justly show, if he could, that what he did was outside of the limits of the patent, properly construed.

Conceding, for the argument, the correctness of the reasoning of the court in the case cited, it will be observed that the parties there were a patentee and a licensee. So far as we have been able to ascertain by a view of the available authorities, the same rule has not been held in cases where the licensor is an applicant only. In Winslow v. Austin, 14 App. D. C. 137, the appellant, Winslow, while still an applicant in the Patent Office, assigned to Licht and Keeney each an undivided one-third of the right, title, and interest in the invention covered by the subsequently issued patent. These assignees assented to a subsequent application for reissue, but afterward, and on the same day, transferred their interest by assignment to the party Austin, who had previously filed an application in his own name, claiming the same subject-matter. Austin protested against the application for reissue. It was claimed that, in taking the assignment of a two-thirds interest, Austin was estopped from asserting claim and priority of invention as against Winslow. The court took a different view, and said:

"* * * But this fact, we think, ought not to be taken as an admission on the part of Austin that he in reality and truth had no claim to the invention involved in the present issue, and that the sole and exclusive right as inventor was in Winslow. As very properly said by the Examiners-in-Chief, he may have obtained the assignment as an easy way to quiet a contest, or in order to combine in himself all adverse claims to the contested invention. He did immediately upon receiving the assignment enter a vigorous protest against the application for reissue of the patent,—a fact not altogether consistent with the supposed concession that the exclusive right to the invention was embraced by the patent under which he held two-thirds interest, as the patent had been surrendered as being worthless without the reissue."

Again, in Laughlin v. Burry, 50 App. D. C. 273, 270 F. 1013, which was an interference proceeding on appeal from the Patent Office, one Turner, after a disclosure to him

by the party Laughlin, employed the party Burry as a draftsman. Thereafter Burry worked out the details of the invention, made application for a patent in his own name, and a patent was issued thereon on July 18, 1916. Turner and the party Laughlin had entered into a contract theretofore that they should jointly share in the invention. Laughlin, thereafter, thinking that he was about to be deprived of his invention, made application for a patent, which was thereupon put in interference with the Burry patent. After this application, the corporation of which the party Laughlin was president took a license to manufacture under the Burry patent. It was thereupon claimed that Laughlin was estopped, by this fact, from claiming the invention. The Court of Appeals, however, was of the opinion that the point was not well taken, and that the principles announced in the case of Winslow v. Austin, supra, were applicable. Having found that Laughlin was the first inventor of the device in question, priority was awarded to him as the result of a decision of the interference matter.

█ The rule of equitable estoppel, as said by the Supreme Court, is: "It is a doctrine, therefore, when properly understood and applied, that concludes the truth in order to prevent fraud and falsehood, and imposes silence on a party only when in conscience and honesty he should not be allowed to speak." Van Rensselaer v. Kearney et al., 11 How. 297, 326, 13 L. Ed. 703. What change of condition has arisen by virtue of the taking of a license by the assignee of appellants which should close their mouths and estop them from insisting that they are the first inventors of the subject-matter of this interference? We know of none. At the time of the granting of this license, both parties were involved in a contest as to who was entitled to priority. The mere taking of the license, in itself, created no change in the condition of the parties, and they should be, and are, free to continue to contest the question as to priority herein.

This claim of estoppel, therefore, made by the appellee, cannot be concurred in by the court, and the record will be examined in a consideration of the other questions involved.

A considerable portion of the brief and argument of appellants herein, as we view it, is addressed to the nonpatentability of the claims involved herein, to Kirschbraun. Attention is called by counsel to a line of authorities which seem to sustain the proposition that an applicant will not be allowed claims which are broader than his disclosure, and which invade a field that might properly be entered by another inventor. Attention is called particularly to three cases:

In re Dosselman, 37 App. D. C. 211, was an appeal from the United States Patent Office in an ex parte case, in which certain claims for a product had been denied by the office. In this application for patent, which was for a finish remover, the original specification covered a composition for removing paint or varnish, consisting of benzol, acetone, and paraffin. The claims in question called for a finish remover containing ketonic finish softening material. The Court of Appeals was of opinion that, inasmuch as the only ketone disclosed in the application was acetone, the applicants were not entitled to claim, generally, all ketonic finish softening material.

In The Incandescent Lamp Patent, 159 U. S. 465, 16 S. Ct. 75, 79, 40 L. Ed. 221, which was a bill in equity to restrain infringement, Sawyer and Man had applied for, and received, a patent on a form of filament for incandescent lamps. The patentees had, as they thought, discovered in carbonized paper the best material for an incandescent conductor, and were allowed claims which seemed to monopolize the use of all fibrous and textile materials for such purposes. Afterwards, Thomas A. Edison, after many experiments with many kinds of fiber, discovered that the fibers from three certain species of bamboo, and from one species of cane from the valley of the Amazon, were particularly adaptable for such filaments, and applied for, and received, a patent therefor. The Supreme Court said, in part: " * * * Under these circumstances, to hold that one who had discovered that a certain fibrous or textile material answered the required purpose should obtain the right to exclude everybody from the whole domain of fibrous and textile materials, and thereby shut out any further efforts to discover a better specimen of that class than the patentee had employed, would be an unwarranted extension of his monopoly, and operate rather to discourage than to promote invention."

Corona Co. v. Dovan Corp., 276 U. S. 358, 48 S. Ct. 380, 381, 72 L. Ed. 610, was also an equity proceeding for infringement. In this case a patent had been issued relating to the vulcanization of rubber. The patentee stated in his specification: "I have dis-

covered that disubstituted guanidines, particularly diphenylguanidine, is particularly effective for this purpose." Claims were in the patent which sought to appropriate to the patentee the processes of treating rubber by combining with the rubber compound "a disubstituted guanidine." The Supreme Court noted that there were between 50 and 100 substances which answered this description, of which quite a number were not accelerators at all. There was also no showing in the case that there was any general quality common to disubstituted guanidines, which makes them all effective as accelerators. It was therefore concluded that such claims were too broad and could not be sustained.

On the strength of these authorities, the appellants now argue that the claims in question, as they appeared in appellee's divisional application, are broader than his invention, as disclosed. But, as we view the matter, this raises a question of patentability only, which we have always consistently held is not an issue here. The latest expression of the court on this subject is found in Marshall et al. v. Ledwinka, 67 F.(2d) 495, 21 C. C. P. A. ——.

For the purposes of this interference, we must assume the patentability of the claims to Kirschbraun, and will look only to the question of priority and such questions as may be ancillary thereto.

The appellants contend that the counts of the interference do not read upon the appellee's disclosure, and that therefore the interference should have been dissolved on that account. For the purposes of the interference, the counts will be broadly construed. Stern v. Schroeder, 36 F.(2d) 518, 17 C. C. P. A. 690.

The disclosure of the appellee made in his specification as hereinbefore quoted, is the use of a relatively stiff paste of colloidal clay and water, in which is dispersed a rubber compound in very small particles, which rubber compound has been theretofore treated in kneading or masticating machines. The specification adds that, after this mixture is made, it is further thinned with water. Taking, for example, the first count of the interference, we find that it describes a method of dispersing a gum into a "colloidal substance," and that this method further comprises the forming of a viscous plastic mass of said colloidal substance, and dispersing the gum into said mass by mastication. The count further provides that this shall be done while "maintaining said colloidal substance as a continuous phase." We are unable to discern wherein the process described by the appellee fails to come directly within the scope and language of this and the other counts in issue. It is conceded, in the argument, that there are clays which are colloidal substances, such as Bentonite and Dixie. It is also shown that such clays are hydrophilic. It seems a reasonable inference that, when the appellee, Kirschbraun, specified that he used a colloidal clay, this would suggest at once to the one skilled in the art the use of a clay, the well-known properties of which were colloidal.

The contention is made by appellants that the colloidal clay, shown by appellee's disclosure, will not remain in a continuous phase; that "colloidal clay is not soluble in water, nor can it ever form a continuous phase with water. It can be suspended in water but retains its discreet particle form." Arguing from this premise, appellants come to the conclusion that, inasmuch as the counts provide for maintaining the colloidal substance "as a continuous phase," the appellee cannot make the counts.

As has been observed by the tribunals in the Patent Office, the only count which has this general language with reference to colloidal substance is count 1. In the other counts it is the paste which must be maintained as a continuous phase. This paste, of course, is composed of the colloidal substance and water, and it seems apparent that, under appellee's disclosure, this paste is maintained in a continuous phase.

As to count 1, the Board of Appeals was of opinion that the count should be construed as if it also referred to the paste as a continuous phase. The Examiner of Interferences made this comment:

"There is nothing in the patent which shows and no proof is pointed out or is submitted to show that water will form a molecular dispersion of the colloids specified in the Trumbull and Dickson patent. Hence the term 'solvent' as used in the counts must, according to the patent disclosure, be interpreted in the broad sense as a dispersion medium in which the *solid will be present* as a colloidal dispersion."

This statement is borne out by the record. In fact, there is no showing to the contrary. The reasonable conclusion is that arrived at by the Board of Appeals, and is obviously the element which both the parties in this interference had in mind, as disclosed, respectively, by them. In our opinion, the Board of Appeals was not in error in affirm-

ing the decision of the Examiner of Interferences holding that the counts were readable upon the disclosure of the appellee.

But one question remains, namely, whether the teaching of appellee's disclosure is sufficient to enable one skilled in the art to successfully practice the invention.

On the part of appellants, tests were made by two chemists, John McGavack, a research chemist doing research work with the United States Rubber Company from 1920 to the time of the hearing in 1930, and Waldo L. Semon, employed by the Goodrich Rubber Company as chemical engineer.

McGavack testified that he conducted a number of tests for the purpose of ascertaining whether the Kirschbraun disclosure was sufficient to enable him to produce a rubber dispersion, which is the subject-matter of the controversy here. He testified, in a general way, that he was unable to successfully practice the invention. Semon testified to similar tests and like unsuccessful results.

On the other hand, the appellee caused a number of tests to be conducted by Harold L. Levin, a research chemical engineer employed by the Flintkote Company. Levin testified, in a general way, that he was able to produce a satisfactory commercial product from the Kirschbraun disclosure. It is not denied by appellants that a satisfactory product was produced by Levin, but it is contended that, in doing so, he used knowledge which was acquired subsequent to the date of the original Kirschbraun application of August 16, 1920. In connection with this claim, it is said by counsel for appellants that the apparatus which he used was not that used in the art in 1920; that the proportions of water which were added to the mixture were not then known to the art; that a ram cover was used; and that a method was followed which no worker in the art would have followed when this application was originally filed.

The record is very voluminous, but we have examined the testimony with such care as the case seemed to require.

Levin testified that the mixer which he used was one which was produced in 1917, and that the ram cover which he prepared and used in order to avoid the loss of water from his apparatus was well known to the art in 1920. It appears, also, that the nature of colloidal clay, such as Bentonite, was then well known, and we think it reasonably appears that it was known to the art, at that time, that certain proportions of water must be added to produce the proper degree of viscosity in a colloidal clay mixture. The tests being carried on by Levin were made at the plant of the Sterling Tire Company, and were in the presence of representatives skilled in the art and in the employ of the appellants.

It has been suggested by counsel for the appellee that the tests conducted by the chemists for the appellants were not strictly in accordance with the teachings of the Kirschbraun disclosure, and were not such as would ordinarily produce successful results, because of the failure in such tests to observe certain requirements which were essential to the proper operation of any such process.

■■ We have examined the testimony of these chemists with some care. Without imputing to them any unfairness or desire to deceive, we are not entirely satisfied that the tests were conducted with the assistance of such knowledge as was available in 1920. However this may be, the burden devolved upon the appellants in attacking the operability of appellee's disclosure to prove, by a preponderance of evidence, that the disclosure was inoperable. This has been recognized as the rule. The courts have also been of opinion that in such cases it is assumed that the one skilled in the art attempting to operate the mechanism, or practice the process, will make such adjustments and corrections as would occur to those naturally skilled in the art to make the device or process operable. Manhattan Book Casing Co. v. E C. Fuller Co. (C. C.) 274 F. 964; Robbins v. Steinbart, 57 F.(2d) 378, 19 C. C. P. A. 1069.

■ We think it may be safely stated that, if one skilled in the art is able, by following the disclosure of an application, and with the aid of the knowledge of the art at that time can and does successfully practice a process or prepare a device described in said disclosure, then the disclosure must be held to be operable, even though others have likewise attempted to successfully practice said disclosure and have failed.

The human element, namely, that of the skill of the worker, must always be considered in such cases. We do not mean by this observation to hold that one may go outside of the disclosure and the known art of the time, and bring to his aid other knowledge acquired from other sources and thus make a disclosure operable, but we do mean that, if one fairly practicing the disclosure, with the aid of the known art, is successful, that is sufficient.

There being no question raised as to the right of priority here, except as we have heretofore mentioned, it follows that the Board of Appeals reached a proper conclusion in awarding priority to the senior party, Kirschbraun, and its decision is affirmed.

Affirmed.

BLAND, Associate Judge, concurs in the conclusion.

GARRETT, Associate Judge, does not participate in this decision.