## CARLSON HOIST & MACHINE CO., Inc., v. BUILDERS EQUIPMENT CORPORATION.

### No. 261.

Circuit Court of Appeals, Second Circuit.

April 11, 1938.

Moses & Nolte, of New York City (Albert Charles Nolte, of New York City, of counsel), for appellant.

Hauff & Warland, of New York City (William E. Warland and A. A. Orlinger, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This is the usual patent suit for the infringement of two patents issued to Conrad Carlson. The apparatus disclosed in the first, No. 1,776,414, was to hoist cement, mortar, and the like, up and down the outside of buildings in course of construction; it consisted of a single sectional "upright" or mast, alongside of which the hod and its carrier were raised by a hoist; one of the objects was to trip the hod at each window, but that feature is not in controversy here. This suit turns upon the construction of the mast and the guides along which the hod-carrier slid, and upon that of the horizontal braces set at each window to steady the mast. The mast was composed of a series of "stout timbers preferably of rectangular sections and joined end to end" (page 2, lines 32, 33)— Figure 6. On both sides of these timbers, 11, angle irons, 13, 14, acted as a rail for the hod-carrier, being embraced by "keepers," 53, which the carrier bore and which held it to the mast. The joints of the timbers, 11, were staggered in relation to the joints of the angle irons, 13, 14, so that an iron would extend beyond the end of a timber on each side, thus embracing the end of the next timber. By bolting the protruding ends of the irons to the end of the next timber, the whole mast was made into a single whiplike compression member. In order to stay the mast to the building, braces were run from it into each window—Figure 6. Claim 1 reads as follows: "A hoisting apparatus * * * including a sectional mast * * * guides fastened to said mast serving to hold the sections thereof together * * * braces extending from the mast to one side of said" (window), "openings, and means interposed between

the other side of the latter and said braces, keeping the same in their assigned positions." The defendant manufactured under a patent to one Levinstim, No. 2,055,-902, issued September 29, 1936, for a similar hoisting apparatus. In this there were two masts, one at each side of the hod-carrier—Figure 3—made up of a backing strip, 36, to which was bolted a square wooden rail, 65, on the inside next to the carrier. The ends of the strip and rail were staggered, and the hod-carrier slid along the rail which it partially embraced by means of the channels, 126, 127. The mast was stayed by a brace which ran to each window opening as in Carlson, but the fastenings were quite different from his. Across the outside of the window opening and extending for a substantial distance beyond it was a horizontal member, 25; a similar member, 48, ran across the inside of the opening, and the two were held together by tie-bolts, 41, 42, so that, when they were tightened, the wall was firmly gripped between the two members, 25 & 48. Braces, 21, 22, ran on either side of the masts to the member, 25, to which they were bolted at some distance outside the window opening, being in addition stayed by diagonal pieces, 28, 29. These braces carried embracing irons, 70, 71, which grasped and held the strip, 36, of the masts.

■ Hod hoists, to be used on the outside of buildings during their erection, had been common before Carlson; they were of various forms. In Maurer, No. 394,781; Harris, No. 710,686; Bathrick, No. 1,009,-037; Levalley, No. 1,168,947; and Reed, No. 1,567,385; the hod-carrier ran between two masts which were built up as compression members. Murphy, No. 1,650,847, hung his masts from beams anchored in the roof; they were tension members. Murphy and Bathrick stayed their masts to the wall by braces, and Murphy's braces ran into the window openings where they were fastened almost exactly like Levinstim's with one exception which we shall consider when we take up the second Carlson patent. Thus, if claim one is to cover Levinstim's disclosure, it can depend for its novelty only upon the construction of the mast; i. e., the staggered relation of the timbers, 11, and the angle irons, 13, 14. Assuming for argument that that would be enough, Levinstim does not infringe unless the means of fastening the braces is within the last element of the only claim in suit, claim 1: "Means interposed between the other side of the" window opening "and said braces." This plainly refers to the struts, 39, 40, and the defendant's argument to the contrary is untenable. The specifications (page 3, lines 40-59), leave no doubt as to what these words meant. "The means for retaining the mastholding braces in their assigned positions within the window openings, comprise preferably pairs of struts, 39, 40 * * *. Both struts are forced, as by driving or hammering them into their respective places, so as to preclude said struts from becoming loose." The "means interposed" between the braces and "the other side of the" window openings cannot refer to the cleats, 33, 34, with their clips, 35, 36, because these are not so disposed, and because other claims, e. g., 8, 9, and 10, contrast them with the struts. To succeed the plaintiff must therefore invoke the doctrine of equivalents, and there is no room for its application. We need not say that a staggered mast was not a novelty sufficient to support the claim as it reads, but, if it is, plainly the advance was a small one; Levalley's mast with its fish-plates to bind together the joints was very close aboard; Carlson's claim must be held to the language he chose. We think that the judge was therefore right in holding that claim one was not infringed.

■ The second Carlson patent, No. 1,-931,978, was also for a hoisting apparatus much like the first, except that it had two masts, one on each side of the hod-carrier. These were made up in the same way, and the invention, so far as need concern us, lay in the braces and the manner of securing them. These must of course embrace the hod-carrier, and if they were both to run straight through the windows, the width of the hod must be diminished by the width of both braces and carrier. In order therefore to allow for a hod which should more nearly occupy the whole window opening, Carlson in his second patent made his braces wider at their outer ends than where they entered the window, and to do so put bends or offsets in them as they approached the wall. They passed through the window as in the first patent, and each was fastened at both sides of the wall—outside and inside—to beams, 17, 17a, which carried upstanding ears, 22, 22a, which in turn carried bolts, 23, 23a. These bolts passed through slots in the

braces, 14, 15, allowing for walls of different thickness. The beams, 17, 17a, were pressed against the wall and the bolts, 23, 23a, passed through the slots and were screwed home. Thus the braces could not be dislodged horizontally or vertically. The Levinstim braces did not pass through the walls at all; and in order to make a plausible argument for infringement the plaintiff must, and does, treat as an equivalent of Carlson's brace, three separate parts; i. e., the "side member," 21, a part of the horizontal "end member," 25, and the tie-bolt, 41. Conceivably that might be possible (functionally they could indeed be so treated), except that Murphy's disclosure would then be an anticipation. It is true that Murphy's tie-bolts, 15, were set at a much less distance inside the "brackets, 17," than Levinstim's; but obviously the width apart of the two "brackets" determined the width apart of the masts and the width of the hod-carrier, and there could be no invention in the particular width chosen. If Levinstim had an "offset" brace, so had Murphy. Perhaps recognizing the force of this reasoning, the plaintiff maintains that Murphy's disclosure is not operable. This rests upon the presence of the "cross-timber," 16, which the plaintiff argues, will hold apart the two members, 13, 14, one on either side of the wall so that they cannot tightly embrace it when the tie-bolt, 15, is screwed home. This member, 16, has no other function, so far as appears, than to support the tripping mechanism—Figure 5— for it is described as follows: "Mounted on each of the cross timbers, 16, of the bracket supporting frame * * * there is a comparatively heavy plate" (page 1, lines 108–110; page 2, lines 1, 2). True, it was fastened at either end to the members, 13, 14, by bolts, and if these passed through holes instead of slots, it prevented any approach or separation of the members 13, 14. Literally therefore the disclosure was inoperative. However, it would be absurd to throw it out for that reason; the cure was at once obvious; we have already suggested it, one need only add slots to the cross-member, 16, and adjustment would become easy. Such corrections are always to be assumed as part of the prior art, or of a patented disclosure. Standard Cartridge Co. v. Peters Cartridge Co., 6 Cir., 77 F. 630, 647; Robbins v. Steinbart, Cust. & Pat.App., 57 F.2d 378, 381; Trumbull v. Kirschbraun, Cust. & Pat.App., 67 F.2d 974, 980; Manhattan Book Casing Machine Co. v. E. C. Fuller Co., C.C., 274 F. 964, 966. Again, it is not necessary to declare invalid claim two of this patent—the only claim in suit—but it must be limited to braces made up of unitary members, as disclosed. The judge was also right in holding that the plaintiff proved no infringement of this claim.

Decree affirmed.